134 F.3d 351
 75 Fair Empl.Prac.Cas. (BNA) 1409,
72 Empl. Prac. Dec. P 45,161,
48 Fed. R. Evid. Serv. 750
John W. REED; Henry Sharber, Plaintiffs-Appellants,
v.
David BAXTER, Individually; City of Murfreesboro,
Defendants-Appellees.
 No. 96-6384.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 11, 1997.
Decided Jan. 9, 1998.
Rehearing and Suggestion for Rehearing
En Banc Denied March 5, 1998.*
 
 Phillip L. Davidson (argued and briefed), Nashville, TN, for Plaintiffs-Appellants.
 Thomas L. Reed, Jr., Office of the City Attorney, Murfreesboro, TN, Larry G. Trail (argued and briefed), Trail & Taylor, Murfreesboro, TN, for Defendants-Appellees.
 Before: MERRITT, JONES, and NORRIS, Circuit Judges.
 MERRITT, J., delivered the opinion of the court, in which NORRIS, J., joined. JONES, J. (pp. 358-60), delivered a separate dissenting opinion.
 OPINION
 MERRITT, Circuit Judge.
 
 
 1
 In this reverse discrimination case, two white firefighters appeal the dismissal of their action brought against the City of Murfreesboro, Tennessee and the city's fire chief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. The plaintiffs allege and offer some evidence to show that an African-American man was promoted to the rank of captain purely on the basis of his race, without regard to the respective qualifications of the candidates. They maintain that the District Court misapplied the law of the attorney-client privilege in two rulings regarding a meeting among the city attorney and other city officials. The plaintiffs contend that these rulings excluded crucial evidence that would have allowed them to prevail at trial. In response, the defendants argue that the plaintiffs have waived their right to appeal the District Court's rulings by failing to offer proof sufficient to preserve the issue for appeal. Although the plaintiffs failed to take steps that would have more clearly preserved the privilege issue for appeal, we conclude that they did enough in light of the District Court's broad rulings. The District Court's rulings rested on a misapplication of the law of the attorney-client privilege and denied plaintiffs the full opportunity to present their case at trial. Therefore, we vacate the judgment of the District Court and remand the case for further proceedings.
 
 I.
 
 2
 In 1992 the Murfreesboro Fire Department took steps to fill a captain's position left vacant when Henry Knox, a black man, was fired. The Department notified prospective candidates that it would select three finalists for promotion to the position based on a combination of test scores, length of service, and number of state certifications. Defendant Baxter was to interview the finalists and recommend one of them to City Manager Roger Haley for the promotion.
 
 
 3
 In December 1992, the plaintiffs and others took a written test created by the Department's Training Officer, Billy Vinson. After the test was graded, Vinson transmitted to the Chief a list of the three applicants most qualified for the position based on the initial promotion criteria--plaintiff Henry Sharber, another white applicant, and an African-American candidate. Vinson then double-checked the results and determined that the list he had sent to Chief Baxter failed to include one candidate who should have ranked among the top three. Chief Baxter requested a list of the top five candidates based on the original criteria. The new list, also prepared by Vinson, included the two plaintiffs, one other white applicant, and two African-American candidates.
 
 
 4
 As the process continued, more problems arose with the test. The Chief received a grievance by an applicant who claimed that the test was unfair because several of the questions contained multiple correct answers. The Promotion Board determined that five of one hundred questions had multiple correct answers and recommended that all applicants be given credit for those questions. The Department's Grievance Committee recommended to the Chief that the test results be set aside. In the meantime, Training Officer Vinson determined that at least four other tests had been incorrectly scored.
 
 
 5
 In light of problems with this and other previously administered tests, Chief Baxter looked into the possibility of obtaining a professionally prepared test. After concluding that cost and time concerns precluded that option, Baxter asked Vinson to determine whether all of the applicants had achieved a passing score on the test. Upon learning that they had, Baxter decided to nullify the test by giving all applicants equal credit. He then instructed Vinson to prepare a list of the top three candidates using the other two criteria--length of service and number of state certifications.
 
 
 6
 The finalists on this list included Thomas Adams, who is white, and Thomas McClain and Emmet Young, both of whom are African-Americans. Young had not appeared on any of the prior lists. Chief Baxter interviewed these three individuals and recommended Young to City Manager Haley for promotion. On December 15, 1992, Haley promoted Young, who at the time had eighteen years of service and who had served as an Instructor/Captain in 1987.
 
 
 7
 On December 16, 1992, the day after the promotion, City Attorney Thomas Reed, Councilmen Christopher Bratcher and Jack Ross, City Manager Haley, and Chief Baxter met in Haley's office. Ross Dep. at 13, R. 26, J.A. at 80. Councilman Ross called the meeting to inquire into the circumstances surrounding Young's promotion. The plaintiffs contend that statements made during this meeting reveal that Young received the promotion purely because of his race. They say that during the meeting, City Attorney Reed informed Councilmen Ross and Bratcher that he had advised the Department to promote an African-American because of the controversy that had arisen out of Henry Knox's termination. The defendants concede that during the meeting Reed disclosed the legal advice he had given City Manager Haley and Chief David Baxter regarding the promotion. Haley Aff. at 1-2, R. 8, J.A. at 53-54; Defs.' Mot. in Limine at 1-2, R. 30.
 
 
 8
 The plaintiffs filed this action in District Court on December 8, 1993, alleging that the defendants violated Title VII by promoting a less qualified African-American to the captain's position purely on the basis of race. During discovery, the plaintiffs issued subpoenas to depose City Attorney Reed, and Councilmen Bratcher and Ross. The defendants moved to quash the subpoenas or for a protective order, contending that the depositions would inquire into a conversation protected by the attorney-client privilege.
 
 
 9
 The District Court denied the defendants' Motion to Quash but invoked its power under Fed.R.Civ.P. 26(c) to grant a protective order instructing the plaintiffs not to inquire into areas protected by the attorney-client privilege or the work product doctrine. Acknowledging that the scope of these areas was unclear, the District Court ordered that the depositions be sealed until it could rule on objections to specific testimony. The court based its order on the following findings: (1) that the parties to the December 16, 1992 meeting discussed pending litigation (i.e., an EEOC claim filed by Henry Knox following his termination) in which the city was a named party; (2) that Reed was acting as city attorney during the meeting; and (3) that Ross and Bratcher were city councilmen at the time of the meeting.
 
 
 10
 The plaintiffs deposed Councilmen Ross and Bratcher but did not depose Reed. During his deposition, Ross testified that he believed, based on statements made during the meeting of December 16, 1996, that race may have been one of many reasons Emmet Young received the promotion. Bratcher testified that the same statements had given him reason to believe that Young received the promotion because of his race. Neither Ross nor Bratcher discussed specific statements made during the meeting.
 
 
 11
 During a pretrial hearing, the District Court granted the defendants' motion in limine to exclude the opinions of Councilmen Ross and Bratcher regarding the promotion and testimony regarding statements made during the December 1992 meeting. The court did not state the basis for its ruling, but the parties assume it was based in substantial part on the attorney-client privilege. The plaintiffs sought interlocutory appeal of this ruling. This Court dismissed that appeal for lack of a final appealable order.
 
 
 12
 A bench trial was held on June 16, 1996. The District Court dismissed the case on September 3, 1996, for lack of merit, holding that the plaintiffs had failed to establish a prima facie case of discrimination. The court stated that even if the plaintiffs had been able to make a prima facie case, they could not have carried their burden of persuasion.
 
 II.
 
 13
 The defendants assert that even if the District Court's rulings constitute reversible error, the plaintiffs waived their right to appeal by failing to make a complete offer of proof as required under Fed.R.Evid. 103(a). The defendants accurately point out that the plaintiffs failed to offer testimony for the record from Councilman Ross or City Attorney Reed. They also contend that although Bratcher did testify, the plaintiffs made no offer of proof regarding any statements made during the December 1992 meeting. The only offer of proof attempted by the plaintiffs regarded Bratcher's opinion about the promotion determination, which the trial court rejected as irrelevant. Tr. at 21, R. 69, J.A. at 135.
 
 
 14
 Moreover, the defendants point out that although plaintiffs filed the depositions of Ross and Bratcher with the court during the motion in limine arguments, they never offered these items into evidence at trial. Relying on Worsham v. Duke, 220 F.2d 506, 509 (6th Cir.1955), they argue that the plaintiffs may therefore not attempt to use these depositions as evidence of the testimony that would have been offered regarding the meeting. The defendants assert that without the depositions, there is no direct evidence before this Court regarding the substance of the testimony the plaintiffs sought to introduce. They further contend that even if the depositions are considered, the testimony constitutes statements of the councilmen's opinions regarding the promotion, which are irrelevant with respect to the ultimate issue in the case.
 
 
 15
 Although the plaintiffs failed to take steps that would have more clearly preserved the attorney-client privilege issue for appeal, the lack of evidence in the record regarding the content of the meeting is attributable primarily to the confusion caused by the District Court's broad rulings excluding in advance any inquiry into evidence that may be covered under the privilege. Confusion over the scope of the court's protective order is evident in the depositions of Councilmen Ross and Bratcher. During the Bratcher deposition, counsel for the defendants objected as soon as it appeared the plaintiffs' attorney was going to ask about statements made during the December 1992 meeting. Defense counsel stated, "I think the order prohibits you from inquiring directly into things that are covered by [the attorney client privilege]," and "the Court has clearly ruled that the meeting itself was privileged." Bratcher Dep. at 8, R. 27, J.A. at 99. After some debate over the order, plaintiffs' counsel appeared to concede that in light of the court's broad ruling, he could not ask about the meeting. Rather, he simply asked Councilman Bratcher whether he had reason to believe that Young had been promoted because of his race. Bratcher Dep. at 8-9, R. 27, J.A. at 99-100. The same confusion was apparent during the Ross deposition. When plaintiffs' counsel attempted to elicit testimony about the content of statements made at the meeting, Councilman Ross refused to answer on the basis of the protective order. Ross Dep. at 20-21, R. 26, J.A. at 87-88. While plaintiffs' counsel may have been able to extract more specific testimony regarding the meeting through more aggressive questioning, the court's unclear order limited the plaintiffs' ability to put evidence into the record.
 
 
 16
 The proposed Pre-Trial Order states that "[i]t is the Plaintiffs' position that ... what was said at [the December 16, 1992] meeting will clearly show that the reason for the promotion of a less qualified black employee over the two more qualified white employees was based on race...." Proposed Pre-Trial Order at 2 (docketed Dec. 1, 1994). In one of their motions in limine, the defendants argued that the conclusions of Ross and Bratcher regarding the role race played in the promotion "are wholly derived from statements made by City Attorney Thomas L. Reed, Jr. in a meeting of December 16, 1992...." Defs.' Mot. in Limine at 1-2, R. 30. The District Court was aware of the substance and significance of the excluded evidence. In light of the confusion caused by the District Court's orders, we believe that the plaintiffs took steps sufficient to preserve their right to raise this issue on appeal. Waltzer v. Transidyne Gen. Corp., 697 F.2d 130, 134 (6th Cir.1983) (excusing failure to make offer of proof where trial court was made aware of general nature of excluded evidence).
 
 III.
 
 17
 The plaintiffs maintain that the District Court's rulings rested on misapplication of the law regarding the attorney-client privilege. They contend that Councilmen Ross and Bratcher participated in the December 1992 meeting as third parties rather than as clients. The plaintiffs maintain that the discussion was not held in confidence and is therefore not entitled to protection from disclosure under the attorney-client privilege. They also contend that the disclosures made at the meeting by the city executive officials had the effect of waiving the privilege.
 
 
 18
 The question of whether the attorney-client privilege applies is a mixed question of law and fact, subject to de novo review. See In re Grand Jury Proceedings October 12, 1995, 78 F.3d 251, 253-54 (6th Cir.1996). Questions of privilege are to be determined by federal common law in federal question cases. Fed.R.Evid. 501. The elements of the attorney-client privilege are as follows: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived. Fausek v. White, 965 F.2d 126, 129 (6th Cir.1992) (citing United States v. Goldfarb, 328 F.2d 280, 281 (6th Cir.1964)).
 
 
 19
 The privilege is based on two related principles. The first is that loyalty forms an intrinsic part of the relationship between a lawyer and client in our adversary system. This loyalty is offended if the lawyer is subject to routine examination regarding the client's confidential disclosures. Kenneth S. Broun, et al., McCormick on Evidence § 87, at 205-06 (3rd ed.1984). The second principle is that the privilege encourages clients to make full disclosure to their lawyers. A fully informed lawyer can more effectively serve his client and promote the administration of justice. Id. § 87, at 205; id. § 89, at 212.
 
 
 20
 The privilege serves these purposes, but it comes with substantial costs. The privilege excludes relevant evidence and stands "in derogation of the search for the truth." United States v. Nixon, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). When an organization such as a corporation is the client, the costs imposed by application of the privilege increase. Given the number of employees who may have information relevant to litigation by or against a corporation, administration of the privilege by the courts proves difficult. More significantly, "[w]here corporations are involved, with their large number of agents, masses of documents, and frequent dealings with lawyers, the zone of silence grows large." David Simon, The Attorney-Client Privilege as Applied to Corporations, 65 Yale L.J. 953, 955 (1956); see also 24 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence § 5476, at 189 (1986); id. § 5476, at 29 (1997 Supp.) (noting that corporations may use the privilege to prevent the disclosure of information useful to adversaries simply by funneling it through lawyers).
 
 
 21
 Despite these doubts, it is now well settled that private corporations and other organizations may constitute clients for purposes of the attorney-client privilege. Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Proposed Federal Rule of Evidence 503 would have extended this rule to municipal corporations and other governmental entities by defining "client" to include "a person, public officer, or corporation, association, or other organization or entity, either public or private...." Proposed Fed.R.Evid. 503(a)(1) (1972) (rejected by Congress), reprinted in Michael H. Graham, Handbook of Federal Evidence § 503.1 (4th ed.1996); see also Restatement (Third) of the Law Governing Lawyers § 124 (Proposed Final Draft No. 1, 1996) ("[T]he attorney-client privilege extends to a communication of a governmental organization...."). Although we have assumed that a governmental entity such as a municipal corporation may invoke the attorney-client privilege, see In re Grand Jury Subpoena (United States v. Doe), 886 F.2d 135 (6th Cir.1989), we have never explicitly so decided. Because we find that the requirements of the privilege have not been satisfied in the present case, we need not resolve this question today.
 
 
 22
 Assuming that the privilege applies, "[i]t is appropriate to recognize a privilege 'only to the very limited extent that ... excluding relevant evidence has a public good transcending the normally predominant principal of utilizing all rational means for ascertaining truth.' " Trammel v. United States, 445 U.S. 40, 50, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980), quoted in In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 918 (8th Cir.) (internal quotation marks omitted), cert. denied sub nom. Office of President v. Office of Indep. Counsel, --- U.S. ----, 117 S.Ct. 2482, 138 L.Ed.2d 991 (1997). Guided by this principle, courts and commentators have cautioned against broadly applying the privilege to governmental entities. See Restatement (Third) of the Law Governing Lawyers § 124, cmt. b; 24 Wright and Graham § 5475, at 126. The recognition of a governmental attorney-client privilege imposes the same costs as are imposed in the application of the corporate privilege, but with an added disadvantage. The governmental privilege stands squarely in conflict with the strong public interest in open and honest government. In re Grand Jury Subpoena Duces Tecum (Office of President v. Office of Indep. Counsel), 112 F.3d at 916, 920-21.
 
 
 23
 Councilmen Ross and Bratcher participated in the December 1992 meeting, along with the city attorney, the city manager, and the fire chief. It is clear that the attorney-client privilege will not shield from disclosure statements made by a client to his or her attorney in the presence of a third party, 8 John Henry Wigmore, Wigmore on Evidence § 2311 (3d ed.1940), but there is little authority about which agents of an organizational client are the client for purposes of the attorney-client privilege. In In re Grand Jury Subpoena (United States v. Doe), 886 F.2d 135 (6th Cir.1989), our only case to address the issue in a governmental context, we found that the Detroit City Council was a client of the city's attorney with respect to closed condemnation hearings held pursuant to the city code. Accordingly, we held that the District Court had erred in concluding that the city council could not invoke the attorney-client privilege to protect the minutes of the meetings. Id. at 138.
 
 
 24
 In Doe, the city attorney called meetings of the full city council pursuant to a provision of the city code providing for formal council approval of condemnation proceedings. Id. at 137-38. Because the city code required the city council itself to initiate such proceedings, the Doe court concluded that the city and the city council were the same entity for purposes of the attorney-client privilege. Id. at 138. The court held that under these circumstances the city council was the client of the city attorney and could invoke the privilege. Id. The Doe court then remanded the case to the district court to determine whether the privilege would apply, a question that depended on the confidentiality of the communications at issue. Id. at 139.
 
 
 25
 The factors that led the Doe court to reach its conclusions are not present in this case. The December 1992 meeting was not a full meeting of the city council called pursuant to any provision of the city code. Councilman Ross called the meeting in response to complaints he had received from constituents about the promotion process. Ross Dep. at 7, R. 26, J.A. at 74. The interests of the councilmen and the interests of the city executives were not the same. The councilmen were not clients at a meeting with their lawyer. Rather, they were elected officials investigating the reasons for executive behavior.
 
 
 26
 The Eighth Circuit's recent decision in In re Grand Jury Subpoena Duces Tecum (Office of President v. Office of Indep. Counsel), supra, is helpful. In that case, the Independent Counsel moved to compel the production of notes taken during meetings pertaining to several Whitewater-related subjects and attended by White House lawyers, the President's wife, and her lawyers. Both the White House and the President's wife moved to block production of the notes on the basis of the attorney-client privilege. They relied in part on the common-interest doctrine, which expands the coverage of the attorney-client privilege where two or more clients with a common interest in a matter are represented by separate lawyers and agree to exchange information concerning the matter. In such instances, a communication of any such client that otherwise would qualify as privileged is privileged as against third parties. 112 F.3d at 922 (citing Restatement (Third) of the Law Governing Lawyers § 126(1) (Proposed Final Draft No. 1, 1996)).
 
 
 27
 Writing for a divided panel, Judge Bowman rejected the assertion of the privilege in part because of disparity of interest between the White House and the President's wife. 112 F.3d at 922-23. Judge Bowman noted that the common interest necessary to invoke the privilege under such circumstances may be "either legal, factual, or strategic in character," but held that the standard had not been satisfied. Id. at 922 (citation omitted). He concluded that while the primary interest of the President's wife in the investigation was avoiding criminal conviction, the White House as an institution faced no such threat. Id. at 923.
 
 
 28
 Although the defendants have not asserted the common-interest doctrine in this case, the same sort of disparity of interest that led to the rejection of the privilege with respect to the White House meetings is also present here. This divergence precludes us from concluding that Councilmen Ross and Bratcher acted as clients of the city's lawyer during the December 1992 meeting. City Manager Haley and Chief Baxter participated in the discussion as the agents of the city responsible for making the promotion that led to this lawsuit. As fire chief, Baxter was the person ultimately responsible for devising and applying the Department's promotional policy. Exercising the discretion afforded him by the city charter, Haley accepted Baxter's recommendation and promoted Young. Thus, it is the conduct of Baxter and Haley that threatens to expose the city to liability.
 
 
 29
 Contrary to the statements made by our dissenting colleague, Councilmen Ross and Bratcher played no role in the promotion of Emmet Young. At the time of Young's promotion, the Murfreesboro city council served as a review board for appeals arising out of the hiring and firing of most city employees, including firefighters. There is no indication whatever in the record that the city council or individual councilmen played any role in firefighter promotions. In fact, in response to plaintiff Reed's EEOC complaint, the defendants stated that under the city charter, "the authority for promotions rests with the City Manager, exclusively." City's Resp. to EEOC charge, Baxter Dep. Ex. 21, R. 28. The factual representations to the contrary made in the dissenting opinion are in error. Councilmen Ross and Bratcher initiated the December 1992 conversation not to obtain the advice of the city attorney--who apparently participated in the meeting at the request of Haley and Baxter, Ross Dep. at 13-14, R. 26, J.A. at 80-81--but to inquire into the basis for the promotion of Young, which had apparently been challenged by their constituents as based on race.
 
 
 30
 In sum, the interests of Ross and Bratcher were adverse to those of Haley and Baxter, and the two councilmen were not clients of the city attorney with respect to the meeting of December 16, 1992. Because Councilmen Ross and Bratcher participated in the meeting as third parties, the discussion was not held in confidence for purposes of the attorney-client privilege. See 8 Wigmore § 2311 ("One of the circumstances[ ] by which it is commonly apparent that the communication is not confidential is the presence of a third person...."). Their discussion is not shielded from disclosure by the attorney-client privilege.
 
 
 31
 The attorney-client privilege issue should be decided only on the basis of neutral principles of law, and not on the basis of the racial considerations recited in the last paragraph of the dissenting opinion. The situation might very well be in reverse--an African-American plaintiff could well be claiming discrimination in promotion. Our ruling on the attorney-client privilege should not be made to depend on "the remedial purposes behind the Civil Rights Act" or whether the city needs to "maintain diversity," as our dissenting colleague suggests. Our ruling on this narrow issue should be color blind and not personal, subjective, or based on multi-cultural considerations.
 
 
 32
 The District Court's protective order and pretrial ruling rested on a misapplication of the law of the attorney-client privilege and denied plaintiffs the opportunity to develop their case fully at trial. We therefore VACATE the judgment of the District Court and REMAND the case for further proceedings consistent with this opinion.
 
 DISSENT
 
 33
 NATHANIEL R. JONES, Circuit Judge, dissenting.
 
 
 34
 The issue before this Court is one of first impression. The majority found that two city councilmen, acting in their official capacities, were third parties in a confidential meeting with the city attorney, and were thus not covered by the attorney-client privilege. Because I feel that the majority construed the attorney-client privilege too narrowly in this context, I respectfully dissent.
 
 
 35
 It is well settled that agents of a client are covered by the attorney-client privilege to the same extent as the client. See, e.g., John Labatt Ltd. v. Molson Breweries, 898 F.Supp. 471, 473 (E.D.Mich.1995) (noting general rule that attorney-client privilege covers communications between client's representatives and client's lawyer). Additionally, the majority has recognized that private corporations and other organizations who are analogous to governmental entities may constitute clients for purposes of the attorney-client privilege. The majority has even recognized that this court has, in its only case addressing the attorney-client privilege in the governmental context, held that a city and city council were the same entity for the purposes of the attorney-client privilege and thus, as client's of the city attorney, a city council could invoke the attorney-client privilege. See In re Grand Jury Subpoena (United States v. Doe), 886 F.2d 135 (6th Cir.1989). Yet, the majority found that in this case, a meeting between two city council members, the city manager, city attorney and city fire chief concerning confidential legal advice and action, did not fall within the ambit of the attorney-client privilege. I disagree.
 
 
 36
 The majority's primary justification for holding that the privilege does not apply in this case is their belief that there is disparity of interest between the city councilmen and those whose activities directly affected the promotion at issue. The majority cites In re Grand Jury Subpoena Duces Tecum (Office of President v. Office of Indep. Counsel), 112 F.3d 910 (8th Cir.), cert denied sub. nom, --- U.S. ----, 117 S.Ct. 2482, 138 L.Ed.2d 991 (1997) as support for that proposition. In that case, however, the President's wife, in her personal capacity, was attempting to assert the attorney-client privilege with regard to a meeting she had with the White House lawyer. Id. at 922. Mrs. Clinton did not allege that she was either an agent of the White House or acting in her official capacity as First Lady. Thus, she was not considered a client of the White House attorney. Mrs. Clinton, to the contrary, merely asserted that although a third party, the common interest doctrine covered her meeting with the White House attorney. Id. at 922. Here, the city councilmen do not have to rely on the common interest doctrine because they attended the meeting in their official capacity as city councilmen. The city council is clearly an agent of the City and as such, is a direct client of the city attorney. Doe, 886 F.2d at 138. Moreover, In re Grand Jury Subpoena Duces Tecum (Office of President v. Office of Indep. Counsel), involved application of the attorney-client privilege in the criminal context. As justification for a narrower reading of the attorney-client privilege, the court noted that it was significant that executive branch employees, including attorneys, were under a statutory duty to report criminal wrongdoing by other employees. 112 F.3d at 920. The court also specifically found that application of the attorney-client privilege in civil litigation would present a different issue. Id. at 917-918.
 
 
 37
 Furthermore, the fact that Councilmen Ross and Bratcher did not play a direct role in the promotion and therefore did not directly expose the City to liability does not remove them from the reach of the attorney-client privilege. In Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), the Supreme Court rejected such a narrow application of the attorney-client privilege in the corporate context. In Upjohn, this court had determined that the "control group" rather than the broader "subject matter" test was applicable for measuring the scope of the attorney client privilege in the corporate context. See United States v. Upjohn Co., 600 F.2d 1223, 1225 (1979), rev'd 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Under the subject matter test all employees of the corporation were considered agents of the corporation, and if in possession of information acquired in the ordinary course of business relating to the subject matter of her employment and the information was communicated confidentially, were covered under the attorney-client privilege. Id. at 1226. Only if the communications did not cover communication of pre-existing documents prepared for independent business reasons, or communications unrelated to the subject matter of the agent's employment, were communications between the corporate attorney and the employee excluded from the reach of the privilege. Id. Under the narrower control group test, however, only those communications made by the "control group" of the corporation, "those officers, usually top management, who play a substantial role in deciding and directing the corporation's response to the legal advice given," were covered by the privilege. Id. at 1226. The Supreme Court granted certiorari and rejected this Circuit's application of the narrow control group approach with regard to the attorney-client privilege in the corporate context. See Upjohn Co. 449 U.S. at 392-93, 101 S.Ct. at 684-85. The Court noted that the control group test "frustrate[d] the very purpose of the privilege by discouraging the communication of relevant information by employees of the client to attorneys seeking to render legal advice to the client corporation." Id. at 392, 101 S.Ct. at 684. The Court criticized the narrow scope given the attorney-client privilege in the court below because it "not only [made] it difficult for corporate attorneys to formulate sound advice when their client [was] faced with a specific legal problem, but [it] also threaten[ed] to limit the valuable efforts of corporate counsel to ensure their client's compliance with the law." Id. Thus, the Court found that the control group test was inapplicable and that because the communications in the case concerned matters within the scope of the employee's corporate duties, their communications with the corporate attorney were covered by the privilege. Id. at 394-95, 101 S.Ct. at 685-86.
 
 
 38
 Upjohn provides clear reasoning for rejecting the majority's construction of the privilege in this case. Although not directly in charge of promotions in the City, City Councilmen Ross and Bratcher are intricately involved in the process. All hires and fires of all city employees are subject to an appeal directly to the city council. The termination of Henry Knox was appealed to the city council and caused the opening for the promotion at issue in this case. Clearly, because the city council must vote on the propriety of promotions if contested, its members have not only an interest, but a duty to discuss the legal ramifications that may be relevant in making their determinations. As the city attorney in this case noted, "it is important that all members of the city council be furnished, by the attorney, all relevant facts upon which to make their decision." (J.A. at 35) (Reed Aff.). Simply because the full city council was not present and Ross and Bratcher were not directly responsible for making the initial promotion decision, does not remove them from the reach of the attorney-client privilege. Indeed, under the majority's reasoning it would be nearly impossible for a city council ever to invoke the attorney client privilege. In most instances, a full city council meeting must be open to the public, which is not conducive to confidential discussions. A city council member then, would only be able to seek confidential legal advice in a private meeting with the city attorney, such as the meeting between the councilmen and city attorney in this case. The majority, however, would prevent such a meeting from being covered by the attorney-client privilege.
 
 
 39
 Finally, the underlying facts of this case do not merit the majority's narrow construction of the attorney-client privilege in order to preserve justice. The facts clearly illustrate that the promotion policy was changed due to problems with the Fire Department's test, and not simply as an effort to obtain a Black candidate. Indeed, as the majority points out, Chief Baxter had two opportunities to choose a Black candidate, which he did not utilize, before finally choosing Emmet Young. That race may have even played a small role in his final decision in an effort to ensure that the Fire Department maintain diversity in the face of an opposite history, and is perceived by its citizens as welcome to all, is not illegal and is in fact one of the remedial purposes behind the Civil Rights Act of 1964. The majority, in its rush to judgment, may well frustrate those very important ideals. Accordingly, I dissent.
 
 
 
 *
 Judge Jones would grant rehearing for the reasons stated in his dissent