POLYCAST TECHNOLOGY CORPORATION, Plaintiff,

v.

UNIROYAL, INC., CDU Holding, Inc., Joseph P. Flannery, John R. Graham, Alexander R. Castaldi, Donald L. Nevins, Jr., Robert Alvine, Alfred Weber, Clayton & Dubilier, Inc., Clayton & Dubilier Private Equity Limited Partnership, Clayton & Dubilier Associates Limited Partnership, Martin H. Dubilier, Joseph L. Rice III, and Alan R. Elton, Martin H. Dubilier, Joseph P. Flannery, John R. Graham, and Joseph L. Rice III as Trustees of CDU Holding, Inc. Liquidating Trust, Defendants.

Alfred WEBER, Counterclaim–Plaintiff,

v.

POLYCAST TECHNOLOGY CORPORATION and Uniroyal Plastics Company, Inc., Counterclaim–Defendants.

No. 87 Civ. 3297 (JMW).

United States District Court, S.D. New York.

March 28, 1989.

**48**

George P. Felleman, Walter Rieman, Carey Ramos, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for plaintiff.

Andrew W. Goldwater, Friedman & Kaplan, New York City, for Alfred Weber.

T. Edward Tighe, Daniel M. Abuhoff, Debevoise & Plimpton, New York City, for all remaining defendants.

## MEMORANDUM AND ORDER

JAMES C. FRANCIS, IV, United States Magistrate.

Plaintiff Polycast Technology Corporation ("Polycast") brings this motion to compel production in unredacted form of certain notes written by defendant Alfred Weber. Defendant Uniroyal, Inc. ("Uniroyal") claims that it is entitled to withhold production of the redacted portions of the Weber notes on the basis of the attorney-client privilege.

*Background*

In October, 1986, Uniroyal completed the sale of its wholly-owned subsidiary, Uniroyal Plastics Company, Inc. ("Plastics"), to Polycast. For several months prior to the closing, Uniroyal and Polycast were engaged in negotiations regarding the purchase price and terms of the sale. The events of this period gave rise to the present controversy: Polycast claims that it received misleading financial data from Uniroyal that misrepresented the condition of Plastics' businesses, while Uniroyal asserts that Polycast intentionally delayed the closing in order to pressure Uniroyal into lowering the purchase price.

During this period, Alfred Weber was Vice President and General Manager of Plastics. Weber took part in the negotiations and communications regarding the sale of Plastics, and kept detailed notes of his impressions and involvement.

In response to Polycast's First Request for Production of Documents, defendants produced 14 pages of Weber's handwritten notes entitled "Memo to File," dated August 15, 1986, several portions of which were redacted. The redacted portions of the notes recount the substance of telephone conversations between Weber and defendant Alan R. Elton, who was then Vice President and General Counsel of Uniroyal. Defendants assert that they are entitled to retain sole possession of the notes of the Weber–Elton conversations through exercise of the attorney-client privilege. Plaintiff asserts that Plastics retains at least joint control of any privilege that has arisen, that Polycast assumed control of Plastics' privileges when it purchased the company from Uniroyal, and that it may now choose to waive the privilege.

*Discussion*

■■■ The presence and extent of an attorney-client privilege are matters to be determined under federal common law on a case-by-case basis. *Upjohn Co. v. United States*, 449 U.S. 383, 389–96, 101 S.Ct. 677, 682–86, 66 L.Ed.2d 584 (1981). In this circuit,

(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

*In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1036 (2d Cir.1984).

It is clear that an attorney-client privilege attaches to the notes of the Weber–Elton discussions. According to the notes, which have been inspected *in camera* by the Court, Weber sought legal advice from Elton regarding his responsibility to disclose business data to Polycast. Weber made his statements to Elton and his notes thereafter in confidence. Affidavit of Alfred Weber, dated January 20, 1989, ¶ 5 at 2–3. Elton's status as Uniroyal's in-house counsel is not of consequence for purposes of the privilege; as he was a qualified attorney approached for legal advice, his role satisfies the second element of the test. *See O'Brien v. Board of Education*, 86 F.R.D. 548, 549 (S.D.N.Y.1980). The presence of T. Oliver Kirrane, Plastics' controller, in Weber's office during one of the conversations did not undermine the confidential nature of the communication but rather underscored the fact that Elton was providing advice to a corporate, rather than an individual, client.

█ As such, neither Weber nor Kirrane may control the exercise of the privilege. Weber's inquiry concerned his legal responsibilities as an officer of Plastics. Any privilege that exists as to a corporate officer's role and duties within the corporation belongs to the corporation, not the officer. *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 348, 105 S.Ct. 1986, 1991, 85 L.Ed.2d 372 (1985). *See Matter of Bevill, Bresler & Schulman Asset Management Corp.*, 805 F.2d 120 (3d Cir.1986). Likewise, a corporate officer or director may not prevent a corporation from waiving its privilege by exercising that privilege individually. *In re Grand Jury Subpoena Duces Tecum*, 391 F.Supp. 1029, 1034 (S.D.N.Y.1975). Therefore, only corporate entities may exercise the privilege attached to the disputed notes.

█ The issue here, then, is that of control over a corporate subsidiary's attorney-client privilege after the subsidiary is sold, with respect to confidential communications occurring prior to the sale. This issue was squarely faced by the court in *Medcom Holding Co. v. Baxter Travenol Laboratories*, 689 F.Supp. 841 (N.D.Ill. 1988). The facts in *Medcom* are strikingly similar to those in the present case. Baxter negotiated the sale of its wholly-owned subsidiary Medcom, Inc. to Medcom Holding, with Baxter's in-house counsel representing both parent and subsidiary. *Id.* at 842. Post-sale disputes between buyer and seller grew into a lawsuit, in the course of which Medcom Holding sought to compel production of documents related to attorney-client communications between officers of Medcom, Inc. and in-house counsel at Baxter. *Id.*

The court in *Medcom* found that both Baxter and Medcom, Inc. had an interest in the communications: Medcom, Inc. because it was a party to the talks and Baxter because of the fiduciary duty owed to it by officers of its subsidiary. *Id.* at 843. The court further determined that a joint privilege may be freely waived by either party, and that Medcom Holding acquired this ability to waive the privilege when it purchased Medcom, Inc. *Id.* at 844.

Several factors point to the finding of a joint privilege in the present case. As in *Medcom*, the subsidiary, Plastics was a party to the communications through its officer Weber. The officers of Plastics in turn owed a fiduciary duty to Uniroyal, Inc., its parent company and sole shareholder, giving Uniroyal an interest in the communications. *See id.. Cf. In re Diasonics Securities Litigation*, 110 F.R.D. 570, 574–75 (D.Colo.1986) (no privilege where fiduciary duty was broken and legal advice was for personal, rather than corporate, benefit).

■ Further, the subject of the Weber–Elton communications suggests that Uniroyal and Plastics had a mutual, rather than separate, interest in the legal advice supplied by Elton. The provision of the Stock Purchase Agreement at issue in the conversation placed responsibility for the disclosure of financial data to Polycast ("Buyer") on the shoulders of both Uniroyal ("Seller") and Plastics ("the Company"):

> 5.2 *Access to Information.* (a) Between the date of this Agreement and the Closing Date, *the Company* and the Subsidiaries *will, and Seller will cause the Company and Subsidiaries to* ... (i) give Buyer and its representatives free and full access to all books, records, offices and other facilities and properties of the Company and each Subsidiary, (ii) permit Buyer to make such inspection thereof as Buyer may request and to make extracts from and copies of such books and records and (iii) furnish Buyer with such financial and operating data and other information with respect to the financial condition, results of operations, business, operations, properties, assets, liabilities or future prospects of the Company and the Subsidiaries and Buyer may from time to time request....

Stock Purchase Agreement among Uniroyal, Inc., Uniroyal Plastics Company, Inc., and Polycast Technology Corporation at 34, annexed as Ex. 1 to Affidavit of Carey R. Ramos, dated February 1, 1989 (emphasis added). Both Plastics and Uniroyal had an interest in complying with the contractual provision by promptly supplying Polycast with accurate information regarding Plastics' businesses. Where corporations have a common legal cause or identity of interest in a matter discussed with an attorney, a joint privilege attaches to the discussion. *See Weil Ceramics & Glass, Inc. v. Work*, 110 F.R.D. 500, 502–03 (E.D.N.Y.1986); *Roberts v. Carrier Corp.*, 107 F.R.D. 678, 687–88 (N.D.Ind.1985); *United States v. American Telephone & Telegraph Company*, 86 F.R.D. 603, 616 (D.D.C.1979); *Matter of Grand Jury Subpoena Duces Tecum Dated November 16, 1974*, 406 F.Supp. 381, 386 (S.D.N.Y.1975).

■ The parties to a joint attorney-client privilege retain their right to waive the privilege and reveal the contents of their legal consultation.

To be sure, what is divulged by and to the clients present at such a meeting cannot be deemed to be confidential *inter sese;* in any later controversy between or among those clients, the privilege could not stand as a bar to full disclosure at the instance of any one of them.

*Matter of Grand Jury Subpoena Duces Tecum Dated November 16, 1974,* 406 F.Supp. at 386. *See Medcom*, 689 F.Supp. at 844. Thus, Plastics retains the ability to waive the joint privilege attached to the Weber–Elton conversations.

■ If a joint defense privilege were to attach to the conversations, this result might be different. A joint defense privilege covers conversations between actual or potential co-defendants and their attorney or attorneys for any common defense purpose; the content of such communications may not be disclosed without the consent of all co-defendants. *Matter of Grand Jury Subpoena Duces Tecum Dated November 16, 1974,* 406 F.Supp. at 394. Such a privilege does not, however, attach to the conversations at issue in the present case: defendants have not demonstrated that the parties "in fact reasonably believed at the time of their meetings and interviews that their statements were being made within the context, and in furtherance, of their joint defense." *Id.* at 389.

■ Actual or potential litigation is a necessary prerequisite for application of the joint defense privilege. *See id.; Matter of Bevill, Bresler & Schulman Asset Management Corp.*, 805 F.2d at 126; *Medcom*, 689 F.Supp. at 846; *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 563–64 (S.D.N.Y.1977). Communications relating to litigation planning or limitation of possible liability may be subsumed under this rubric, so long as the contacts relate to a common defense. *See Hunydee v. United States*, 355 F.2d 183 (9th Cir. 1965) (discussions regarding plea bargain

and cooperation with government); *Davis v. Costa–Gavras,* 580 F.Supp. 1082, 1098–99 (S.D.N.Y.1984) (pre-production libel review intended to limit legal difficulties from film was pooling of information towards joint defense).

But the Weber–Elton conversations did not pertain to actual or potential litigation, limitation of legal liability, or the development of a common defense. They concerned contractual obligations under the Stock Purchase Agreement to which Plastics and Uniroyal were parties. Weber Aff., ¶ 4 at 4; Affidavit of Alan R. Elton, dated January 20, 1989, ¶ 4 at 2. Defendants have thereby failed to prove the elements necessary for a finding of a joint defense privilege. As such, Plastics may choose to unilaterally waive the joint privilege that has been found.

■ Polycast acquired this authority to waive the joint privilege when it purchased the stock of Plastics. *See Medcom,* 689 F.Supp. at 844. The power to waive a corporation's attorney-client privilege rests with corporate management, who must exercise this power consistent with their fiduciary duty to act in the best interest of the corporation. *Commodity Futures Trading Commission v. Weintraub,* 471 U.S. at 348–49, 105 S.Ct. at 1990–91.

> (W)hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well. New managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors. Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties.

*Id.* at 349, 105 S.Ct. at 1991. Just as Plastics' new management has an obligation to waive or preserve the corporation's privileges in a manner consistent with their fiduciary duty to protect corporate interests, Polycast, as parent and sole shareholder, has the power to determine those interests. *See Medcom,* 689 F.Supp. at 844. Because there are ample grounds for a finding that the privilege is held jointly by Polycast and Uniroyal, and because Polycast acquired control over Plastics' privilege rights when it purchased the company, Polycast and Plastics' new management may now waive the privilege at their discretion.

*Conclusion*

For the foregoing reasons, Polycast's motion to compel production of the redacted portions of the Weber notes is granted.

SO ORDERED.