BASS PUBLIC LIMITED COMPANY, Bass International Holdings N.V., Bass (USA) Incorporated, Holiday Corporation and Holiday Inns, Inc., Plaintiffs,

v.

The PROMUS COMPANIES INCORPORATED, Defendant.

No. 92 Civ. 0969 (SWK).

United States District Court, S.D. New York.

Nov. 30, 1994.

**616**

Farella, Braun & Martel, San Francisco, CA by Norma G. Formanek, John L. Cooper, James W. Morando, Friedman, Wang & Bleiberg, New York City by Peter N. Wang, Joan R. Salzman, for plaintiffs.

Latham & Watkins, New York City by Michael K. Hertz, Latham & Watkins, Chicago, IL by James G. Hunter, Jr., James A. Cherney, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this action arising under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5, defendant The Promus Companies Incorporated ("Promus") appeals from an April 25, 1994 Memorandum and Order issued by Magistrate Judge Naomi Buchwald compelling the law firm of Latham & Watkins ("Latham") to produce certain documents to plaintiffs. Latham argues that the documents are not discoverable as they contain privileged attorney work product and attorney-client communications. For the reasons set forth below, Promus' appeal is denied.

### BACKGROUND

The facts of this case are set forth in detail in this Court's Memorandum Opinion and Order, dated January 7, 1994 (the "January 7 Opinion"), familiarity with which is presumed. Background facts relevant to this motion are briefly summarized below.

### I. The Merger

Until 1989, Holiday Corporation ("Holiday") was a publicly-held company with several substantial businesses, including Holiday Inn hotels. Holiday also owned several non-Holiday Inn businesses, including Embassy Suites hotels, Hampton Inns hotels, Home-

wood Suites hotels, and Harrah's casino-hotels.

In 1989, Holiday, as part of the divestiture of its Holiday Inn businesses, created a wholly-owned subsidiary, Promus, to which it transferred its non-Holiday Inn businesses in preparation for a merger. Thereafter, on August 24, 1989, Holiday, consisting solely of Holiday Inns, was merged into Bass, U.S.A., a wholly-owned subsidiary of Bass Public Limited Corp. ("Bass"), to form one corporation ("Post-merger Holiday"). The transaction was executed pursuant to a merger agreement (the "Merger Agreement") signed by representatives of Bass, Holiday and Promus.

Pursuant to the Merger Agreement, each share of Holiday common stock was cancelled, and in return, each shareholder of the cancelled stock received approximately a one-quarter share of Bass and one share of the new company, post-merger Holiday, for every share held of Holiday. On February 7, 1990, the effective date of the merger, Promus, Holiday and Bass also entered into a tax sharing agreement whereby Promus agreed to be responsible for the taxes of Holiday and its subsidiaries for all taxable periods up to the time of the merger (the "Tax Sharing Agreement"). At the same time, the non-Holiday Inn businesses continued operating as subsidiaries of Promus with the same shareholders, board of directors, senior managements and corporate headquarters as Holiday.

In connection with the merger, the parties to the Merger Agreement agreed to certain representations and warranties involving, *inter alia*, the disclosure of matters that had a material and adverse effect on the Holiday Inn business. Promus also agreed to indemnify plaintiffs if any of the representations and warranties were breached. The representations and warranties survived only as to claims made within two years after the closing of the merger, and indemnity claims were allowed only as to breaches of representations and warranties that were known to ten designated "knowledge parties" chosen in light of their existing knowledge about the Holiday Inn business.

## II. Procedural History

On February 6, 1992, plaintiffs filed the instant complaint, alleging that Promus had breached a number of representations, warranties and covenants made in the Merger Agreement. Plaintiffs alleged further that Promus had refused to indemnify Bass and to transfer certain assets. Specifically, plaintiffs alleged that Promus (1) violated the Securities Exchange Act (Count I); (2) intentionally and/or negligently misrepresented material facts in connection with the Merger and Tax Sharing Agreements (Counts II and III); (3) breached express warranties and indemnification (Counts IV–VII); and (4) breached the Merger and Tax Sharing Agreements (Counts VIII and IX).

On April 17, 1992, plaintiffs moved for an order disqualifying Promus' counsel, Latham, on the ground that, as Latham had represented Holiday since 1986 in connection with the merger and various other matters, Latham should not be allowed to represent Holiday's adversary, Promus, in this case. In the January 7 Opinion, the Court denied plaintiffs' motion, finding disqualification inappropriate in the present circumstances. Specifically, the Court rejected plaintiffs' argument that Latham had switched sides in representing Promus against post-merger Holiday, reasoning that Latham consistently had represented the selling corporations, namely Holiday and Promus. Concluding that Latham had represented the same "community of interests," and noting that there is no expectation that confidential information would be withheld from joint clients, the Court found Latham to be in compliance with the New York Lawyer's Code of Professional Responsibility and the American Bar Association Model Rules of Professional Responsibility.

## III. The Present Dispute and the April 25 Order

On August 19, 1992, Holiday served Promus with a subpoena requesting the production of documents related to Latham's advice, due diligence investigation, negotiations and drafting in connection with the merger (the "subpoenaed documents"). Latham refused to comply with the subpoena, however, on

the ground that the subpoenaed documents are protected as attorney work product and by the attorney-client privilege.

On February 8, 1994, the Court referred this case to Magistrate Judge Buchwald to supervise discovery. On March 11, 1994, plaintiffs moved before the Magistrate Judge, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, for an order compelling the production of the subpoenaed documents. On April 25, 1994, Magistrate Judge Buchwald issued a Memorandum and Order (the "April 25 Order") granting plaintiffs' motion and compelling the production of the subpoenaed documents.

The Magistrate Judge determined that the issue presented "is not whether the documents come within the attorney-client privilege, which we may assume that they do, but rather, the issue is who may currently exercise control over the privilege, or, more specifically in this context, who may waive the privilege." April 25 Order at 2. Noting that Promus had "conceded, and indeed vigorously argued in opposition to the disqualification motion brought by plaintiffs, that Promus and [Holiday] were jointly represented in this transaction by Latham," Magistrate Judge Buchwald found no basis for Latham's refusal to produce the subpoenaed documents to its former client, Holiday. *Id.* at 3. The Magistrate Judge rejected Promus' argument that post-merger Holiday no longer held the privilege due to a lack of "community of interests" with Holiday. *Id.* She also rejected Promus' contention that the "joint defense privilege" prevents post-merger Holiday, as a holder of a joint attorney-client privilege with Promus, from waiving its privilege. *Id.* at 4. Specifically, the Magistrate Judge found Promus' argument "unavailing as the prerequisites to the existence of a

joint defense privilege simply are not present here." *Id.*

Finally, Magistrate Judge Buchwald determined that "Promus' arguments do not take into account the actual language of the Merger Agreement or the drafting and representational options that were available." *Id.* at 5. Specifically, the Magistrate Judge relied upon Article I, Section 1.2 of the Merger Agreement which provided that "the separate corporate existences of [Holiday] with all its rights, privileges, immunities, powers and franchises shall continue unaffected by the Merger." *See* Merger Agreement, annexed to the Complaint as Exh. "A," at 14; *see also* April 25 Order at 5. Magistrate Judge Buchwald concluded that this provision ensured that post-merger Holiday would continue to hold a joint attorney-client privilege absent an agreement to the contrary. April 25 Order at 5. Moreover, the Magistrate Judge noted that "the document access provisions in Article VI, Sections 6.23 and 6.24 of the Merger Agreement could have provided an exclusion for these documents" if the parties had so intended.[1] *Id.*

## IV. Promus' Objections

On May 9, 1994, Promus appealed the April 25 Order to this Court, contending that the Magistrate Judge misinterpreted relevant case law and failed properly to apply the law to the facts presented. Specifically, Promus argues that the Court should reverse the April 25 Order on the grounds that (1) plaintiffs do not have the right unilaterally to waive Promus' attorney-client privilege; and (2) the subpoenaed documents are protected under the joint defense privilege.[2] Plaintiffs oppose Promus' objections, arguing that Magistrate Judge Buchwald properly analyzed the law and facts of this case.

---

**1.** Article VI, Section 6.23 and 6.24 pertain to "Corporate Records" and "Access to Information," respectively.

**2.** Promus also argues that the subpoenaed documents are protected as attorney work product. Specifically, Promus asserts that the subpoenaed documents contain legal advice rendered at a time when Latham "reasonably anticipated that litigation with Bass would result" from the dealings between the parties. *See* Affidavit of E.O.

Robinson, Jr., sworn to on March 25, 1994, annexed to the Affidavit of Michael K. Hertz, sworn to on May 9, 1994, as Exh. "B," at ¶ 13. The Court disagrees and finds that Magistrate Judge Buchwald properly rejected Promus' argument on the ground that Promus' "definition would be to extend work product to virtually every lawyer's drafting efforts simply because the lawyer endeavored to protect his client's interests." *See* Report at 1 n. 1.

## DISCUSSION

### I. Standard of Law

█ Rule 72(a) of the Federal Rules of Civil Procedure provides, in pertinent part:

A magistrate judge to whom a pretrial matter not dispositive of a claim or defense of a party is referred to hear and determine shall promptly conduct such proceedings as are required and when appropriate enter into the record a written order setting forth the disposition of the matter.

Fed.R.Civ.P. 72(a). Under Rule 72(a), if a party objects to a magistrate judge's order, the district court "shall consider such objections and modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." *Id.* A magistrate judge's ruling regarding discovery issues is afforded substantial deference by the district court. *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 124 F.R.D. 75, 77 (S.D.N.Y.1989); *Citicorp v. Interbank Card Ass'n*, 478 F.Supp. 756, 765 (S.D.N.Y. 1979).

### II. Attorney–Client Privilege

#### A. Privilege Transfer

█ Promus argues that plaintiffs are not empowered unilaterally to waive the attorney-client privilege that exists between Holiday and Latham. Specifically, Promus contends that the merger caused a fundamental change in the nature of the relationships among the corporate entities, thereby requiring the consent of Promus before ordering Latham to disclose privileged materials to plaintiffs. The Court disagrees.

In *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349, 105 S.Ct. 1986, 1991, 85 L.Ed.2d 372 (1985) ("*Weintraub*"), the Supreme Court confronted the right to waive the attorney-client privilege in the context of corporate changes. The Court stated that "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Id.* Moreover, "[n]ew managers installed as a result of

a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors." *Id.*

The principle that the authority over the attorney-client privilege passes to new management has been applied by several courts since *Weintraub.* For example, in *Medcom Holding Co. v. Baxter Travenol Lab., Inc.*, 689 F.Supp. 841, 844 (N.D.Ill.1988) ("*Medcom*"), the court held that the attorney-client privilege between a subsidiary and its counsel passed to the purchasing corporation upon acquisition from the selling parent. The defendant in *Medcom* had argued that *Weintraub* was inapplicable on the ground that there, the Supreme Court did not deal with corporate changes such as takeovers and mergers. *Id.* In rejecting this argument, the court noted that *Weintraub* "expressly included takeover and mergers in its finding that new corporate managers may waive the attorney-client privilege as to communications of prior management." *Id.* Accordingly, the court concluded that either holder of the joint privilege was empowered to waive the privilege through voluntary disclosure of privileged information to any third party, including the purchasing corporation. *Id.*

Similarly, in *Polycast Technology Corp. v. Uniroyal, Inc.*, 125 F.R.D. 47, 49 (S.D.N.Y. 1989) ("*Polycast*"), this Court addressed the issue of "control over a corporate subsidiary's attorney-client privilege after the subsidiary is sold, with respect to confidential communications occurring prior to the sale." *Id.* In *Polycast*, the purchasing corporation sought the disclosure of prior communications between the purchased subsidiary and an attorney that had represented both the subsidiary and the selling parent. *Id.* at 48. Relying upon *Weintraub* and *Medcom*, the Court held that a joint privilege existed between the selling parent and the subsidiary and that the buying corporation effectively acquired the subsidiary's share of the privilege as a result of the sale.[3] *Id.* 125 F.R.D. at 49.

---

3. Promus attempts to distinguish *Polycast* on the grounds that *Polycast* (1) did not deal with the production of all legal advice but rather the

production of notes written by an officer of the subsidiary; and (2) distinguished between normal communications and those communications

The Court finds *Weintraub, Medcom* and *Polycast* to be instructive to the present case, as the Court similarly is faced with a selling corporation seeking to protect confidential communications between its former subsidiary and counsel. As in *Medcom* and *Polycast,* Holiday's part ownership of the attorney-client privilege remained with it after the merger was completed and therefore came under the control of Bass, the new corporate parent. *See also Rayman v. American Charter Fed. Sav. & Loan Ass'n,* 150 F.R.D. 634, 638 (D.Neb.1993) (stating that "a surviving corporation following a merger possesses all of the privileges of the pre-merger companies ... includ[ing] the privileges the subsidiary company holds at the time the sale is completed"). Therefore, new management immediately acquired Holiday's rights with respect to its attorney-client privilege. *See Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. at 349, 105 S.Ct. at 1991.

## B. Waiver of Privilege

 Promus next argues that, even if the attorney-client privilege remained with Holiday after the merger, post-merger Holiday may not waive the privilege unilaterally for the benefit of its new corporate parent, Bass. The Court disagrees.

This Court already has concluded that Holiday and Promus were jointly represented by Latham prior to the merger. *See* January 7 Opinion at 15. Consequently, any communications among Latham, Holiday and Promus prior to the merger are subject to a joint attorney-client privilege. *See Polycast Technology Corp. v. Uniroyal, Inc.,* 125 F.R.D. at 50 (stating that "[w]here corporations have a common legal cause or identity of interest in

a matter discussed with an attorney, a joint privilege attaches to the discussion"). Where there is a joint attorney-client privilege, there is no expectation that confidential information will be withheld from joint clients as there is no privilege between them. *Kempner v. Oppenheimer & Co.,* 662 F.Supp. 1271, 1277 (S.D.N.Y.1987) (citing *Trinity Ambulance Serv. v. G & L Ambulance Servs., Inc.,* 578 F.Supp. 1280, 1282 (D.Conn. 1984)) (*"Trinity "*). Consequently, as a joint holder of the attorney-client privilege, post-merger Holiday was permitted to disclose its communications, including the subpoenaed documents, to Bass. *See, e.g., In re Sealed Case,* 676 F.2d 793, 809 (D.C.Cir.1982) (stating that "any voluntary disclosure by the client to a third party breaches the confidentiality of the attorney-client relationship and therefore waives the privilege"). Accordingly, the Court agrees with Magistrate Judge Buchwald that plaintiffs were entitled to waive the attorney-client privilege and seek disclosure of the subpoenaed documents.[4]

Moreover, the Magistrate Judge correctly determined that the language of the Merger Agreement supports the conclusion that post-merger Holiday continued as a joint holder of its attorney-client privilege with Latham after the merger. *See* Report at 5. Specifically, Section 1.2 of the Merger Agreement, stating that post-merger Holiday would retain "all its rights [and] privileges," *see* Merger Agreement, annexed to the Complaint as Exh. "A," at 14, indicates that post-merger Holiday never relinquished its attorney-client relationship with Latham. *See* Report at 5. Further, the Court agrees with the Magistrate Judge that if the parties had intended to exclude the subpoenaed documents from the purview of the Merger Agreement, it could have accomplished this

---

with the potential of triggering liability. Promus' argument is without merit, however, as (1) the privilege covers all communications between the attorney and client; and (2) the *Polycast* court's reference to communications pertaining to liability was only in the context of deciding whether the defendant had established the elements of a joint defense privilege.

4. Promus mistakenly relies upon *Trinity Ambulance Serv., Inc. v. G & L Ambulance Servs., Inc.,* 578 F.Supp. at 1285, for the proposition that any confidential information that post-Merger Holi-

day may know or control may not under any circumstances be shared with Bass. In *Trinity,* the court determined that the realignment of the parties midway through a litigation proceeding required that certain information divulged to an attorney remain confidential after the realignment. *Id.* at 1285. Unlike in *Trinity,* however, in the present case the Court is not faced with an involuntary realignment but rather with a voluntary transaction in which all parties were aware that post-merger Holiday would come under the control of Bass.

 

goal by drafting the document accordingly. *See id.* Accordingly, the Court finds that Post-merger Holiday was authorized to waive the attorney-client privilege with respect to the subpoenaed documents.

### C. Joint Defense Privilege

Promus also argues that, even if post-merger Holiday continued to hold a joint attorney-client privilege with Promus with respect to the subpoenaed documents, some of the subpoenaed documents nonetheless are not subject to post-merger Holiday's waiver right under the joint defense privilege. The Court finds Promus' argument unpersuasive.

■ As a general rule, disclosure to a third party of privileged information automatically waives the confidentiality privilege. *In re Grand Jury Subpoenas,* 902 F.2d 244, 248 (4th Cir.1990). An exception to this general rule is embodied in the joint defense privilege, which requires the consent of all parties who share the privilege before waiver can occur. *Id.* The joint defense privilege "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *United States v. Schwimmer,* 892 F.2d 237, 243 (2d Cir.1989). The joint defense privilege only applies, however, to communications between actual or potential co-defendants and their attorney for any common defense purpose. *Polycast Technology Corp. v. Uniroyal, Inc.,* 125 F.R.D. at 50. The parties must reasonably believe, at the time the communications are made, that the communications are intended to further the parties' joint defense. *Id.* (citing *In re Grand Jury Subpoena Duces Tecum Dated November 16, 1974,* 406 F.Supp. 381, 389 (S.D.N.Y.1975)).

In the present case, the Magistrate Judge correctly determined that the joint defense privilege does not apply. Promus and Holiday were never co-defendants in this action and there is no evidence that any of the parties anticipated that they would become co-defendants in subsequent litigation. As Promus cannot meet the requirement of demonstrating the existence of any potential litigation in which Promus and Holiday would appear as co-defendants, the joint defense privilege has no application to the case at hand. Accordingly, the Court agrees with Magistrate Judge Buchwald's conclusion that plaintiffs properly waived the attorney-client privilege and finds that the April 25 Order is not "clearly erroneous or contrary to law." *See* Fed.R.Civ.P. 72(a).

### CONCLUSION

For the reasons set forth above, Promus' motion for an order reversing Magistrate Judge Buchwald's April 25 Order compelling the production of the subpoenaed documents from Latham is denied. Promus is directed to produce the subpoenaed documents in compliance with the October 25 Order by December 9, 1994. The parties are directed to continue discovery pursuant to the schedule imposed by the Magistrate Judge and to appear at a pre-trial conference before this Court on Wednesday, January 25, 1995 at 2:00.

SO ORDERED.