Craig **HEDQUIST**, and Hedquist Construction, Inc., a Wyoming Corporation, Plaintiffs,

v.

John **PATTERSON**, Andrew Beamer, and The City of Casper, Defendants.

Civil No. 14–CV–45–ABJ

United States District Court, D. Wyoming.

Signed 04/18/2016

Frank R. Chapman, Marci Anne Crank Bramlet, Thomas R. Smith, Chapman Valdez, Casper, WY, John H. Robinson, Jamieson & Robinson, Casper, WY, for Plaintiffs.

Bruce A. Salzburg, Traci L. Lacock, Hirst Applegate LLP, Cheyenne, WY, John A. Masterson, Alaina Marie Stedillie, Welborn, Sullivan, Meck And Tooley, P.C., Casper, WY, Kay Lynn Bestol, Sundahl Powers Kapp & Martin, Cheyenne, WY, for Defendants.

## ORDER DENYING PLAINTIFFS' FIRST MOTION TO COMPEL PRODUCTION OF DOCUMENTS CONCERNING COMMON INTEREST CLAIMS [DOC. 97]

Kelly H. Rankin, U.S. Magistrate Judge

This matter is before the Court on Plaintiffs' First Motion to Compel Production of Documents Concerning Common Interest Claims [Doc. 97]. The Court having carefully considered the Motion, Response, and Reply, and being fully advised in the premises, FINDS:

### BACKGROUND

In 2012, Plaintiff Craig Hedquist initiated a campaign to run for a position with the City of Casper City Council (City Council). Am. Memo. in Supp. of Pls.' First Mot. to Compel Produc. of Docs. Concerning Common Interest Claims 2, Feb. 29,

2016, ECF No. 98. During his campaign, Hedquist published a letter criticizing Defendants John Patterson, the City Manager, and the City Council for their public policies. *Id.* at 2. Hedquist was subsequently elected to the City Council and took office in January 2013. *Id.* at 3.

Early in Hedquist's term on the City Council, conflicts arose regarding contracts between Hedquist's Company Hedquist Construction, Inc. and the City of Casper (City). *Id.* at 3. Three of the projects Hedquist Construction Inc. contracted to perform were engineered by Civil Engineering Professionals, Inc. (CEPI), an engineering firm hired by the City as an independent contractor to monitor the projects. Defs.' Resp. to Pls.' First Mot. to Compel Produc. of Docs. Concerning Common Interest Claims 4–5, 14–15, Mar. 14, 2016, ECF No. 106. Payments to Hedquist's company were withheld after Defendant Andrew Beamer, the City Engineer, wished to designate the company as a non-responsible bidder to make it ineligible for future projects with the City. Am. Memo. in Supp. of Pls.' First Mot. to Compel 14. Tom Brauer from CEPI conducted mediations that ultimately settled the dispute with Hedquist Construction, Inc. paying damages to the City. Defs.' Resp. to Pls.' First Mot. to Compel Produc. of Docs. Concerning Common Interest Claims 4–5. However, the relationship between Hedquist and Defendants worsened after Hedquist directed numerous expletives toward Defendants in an August 2013 confrontation secretly recorded by Beamer. Am. Memo. in Supp. of Pls.' First Mot. to Compel 3.

Based on the confrontation between Hedquist and Beamer, Defendants opened an investigation into Hedquist's conduct. *Id.* Beamer and Rick Harrah, the former Director of Public Services for the City of Casper, filed separate complaints against Hedquist alleging workplace violence and a violation of ethics and conflict of interest laws. Defs.' Resp. to Pls.' First Mot. to Compel 2–3. Patterson recommended the City Council remove Hedquist from office and filed a Petition for Hedquist's Removal. Am. Memo. in Supp. of Pls.' First Mot. to Compel.10. Due to a conflict of interest, the City of Casper Attorney's Office (City Attorney) hired several outside attorneys to participate in the investigation. *Id.* at 3.

The City Attorney hired three separate attorneys during the investigation into Hedquist's conduct. *Id.* at 4. Attorney Kathleen Dixon was hired to investigate the complaint alleging workplace violence. Attorney Judy Studer was chiefly hired to investigate Hedquist's alleged violation of ethics and conflict of interest laws and to represent the City Council during the removal proceeding. *Id.* at 5. Attorney Wes Reeves was hired to represent Patterson and prosecute the Petition to remove Hedquist from the City Council. Defs.' Resp. to Pls.' First Mot. to Compel. 4.

As the removal proceeding approached, Hedquist filed a Motion to Dismiss Patterson's Petition. *Id.* The City Council granted Hedquist's Motion, finding no legal basis to remove Plaintiff. *Id.* Despite the City Council's decision not to remove Hedquist, Hedquist resigned from the City Council thereafter and filed the present lawsuit, alleging Defendants retaliated against him for exercising his Constitutional rights in violation of 42 U.S.C. § 1983. Second Am. Compl. 28–30, Sept. 20, 2015, ECF No. 75. Hedquist now seeks all witness statements and communications related to Defendants' attempt to remove Hedquist from the City Council. Pls.' First Mot. to Compel 2. Defendants have objected to Hedquist's request, withholding the witness statements and communications under the attorney-client privilege, the work-product doctrine, and the common-interest doctrine. *Id.* at 2.

### PLAINTIFFS' MOTION [Doc. 97]

Plaintiffs argue Defendants' legal interests were not similar to the interests of the City Council during the removal proceedings. Am. Memo. in Supp. of Pls.' First Mot. to Compel 19. Plaintiffs cite case law noting the competing interests that may exist within a municipal government. *Id.* Thus, according to Plaintiffs, the common-interest doctrine does not protect the materials gathered during the investigation of Hedquist and produced to other parties from discovery. *Id.* Furthermore, Plaintiffs assert Defendants have failed to identify the "identical legal interest" necessary to assert the common-interest doctrine. *Id.* at 20.

### DEFENDANTS' RESPONSE [Doc. 106]

Defendants oppose Plaintiffs' Motion and request it be denied. Defs.' Resp. to Pls.' First Mot. to Compel. 2. Defendants claim the attorney-client privilege covers communications between Studer and the City Council, communications between Studer and Defendant Patterson, communications between Reeves and Defendant Patterson, and communications between Defendant Patterson, the City Council, Defendant Beamer, and CEPI. *Id.* at 8–18. Additionally, Defendants assert there was no waiver of the attorney-client privilege because communications were made pursuant to the common-interest doctrine or a joint defense. *Id.* at 9–18. Defendants concede Patterson and the City Council did not share a common-interest in the Petition for Removal and have agreed to produce any communications disclosed regarding that issue. *Id.* at 18.

### PLAINTIFFS' REPLY [DOC. 113]

In their Reply, Plaintiffs refute Defendants' claim regarding the attorney-client privilege. Pls.' Reply in Supp. of Pls.' Fisrt Mot. to Compel Concerning Common Interest Claims 1, Mar. 29, 2016, ECF No. 113. Specifically, Plaintiffs note the City is a public entity entitled to less protection by way of privilege. *Id.* at 1–2. Plaintiffs also reassert no common interest existed between Defendants as Patterson served as a prosecutor while the City Council served as an impartial tribunal or, in the alternative, that any attorney-client privilege was waived when Defendants shared the communications with third parties or each other. *Id.* at 3. Plaintiffs then posit any communications with CEPI are not privileged as CEPI is not the "functional equivalent" of a City employee and CEPI was a third-party witness to the conflict between Hedquist and Defendants. *Id.* at 5. Additionally, Plaintiffs filed a second Reply noting Patterson could not have had a joint interest with the City Council as he recused himself during a vote on a City contract involving Hedquist Construction, Inc. Additional Material in Supp. of Pls.' First Mot. to Compel Concerning Common Interest Claims 2–3, Apr. 7, 2016, ECF No. 116.[1]

---

1. The Court notes that the filing of this "second reply brief" was improper. Pursuant to the Court's Local Rules, "[p]arties may file *a* reply brief for motions to be determined without a hearing if *the* reply brief is filed within seven (7) days of the filing of the response brief." U.S.D.C.L.R. 7.1(b)(1)(D) (emphasis added). Moreover, a party filing a non-dispositive motion with the Court has a duty to confer with the opposing party and to then state the efforts to confer and the opposing party's position in the motion. U.S.D.C.L.R. 7.1(b)(1)(A). Plaintiffs' Additional Material in Support of Plaintiffs' First Motion to Compel Concerning Common Interest Claims is substantively a reply brief. The document attempts to support Plaintiff's Motion to Compel [Doc. 97] and responds to arguments made in Defendants' Response [Doc. 106]. Additional Material in Supp. of Pls.' First Mot. to Compel Concerning Common Interest Claims 2–3, Apr. 7, 2016, ECF No. 116. The Local Rules limit parties to a single reply brief, and Plaintiffs already filed a Reply in Support of Plaintiffs' First Motion to Compel

## RELEVANT LAW AND RULING OF THE COURT

The issues before the Court are whether the communications sought by Plaintiffs are protected from discovery by the attorney-client privilege. If the Court finds that the privilege applies, the Court must then consider whether the communications were (1) relayed as part of a common interest, or (2) relayed to a non-interested third party and accordingly waived by Defendants.

■ Pursuant to Rule 26 of the Federal Rules of Civil Procedure, parties to a lawsuit may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The purpose of the rule is to allow broad discovery of relevant information, even if that information is not admissible at trial. *Id.* In addition, and as emphasized by controlling precedent from the Tenth Circuit, a trial court has broad discretion in fashioning the terms and conditions of discovery. *Marsee v. U.S. Tobacco Co.*, 866 F.2d 319, 326 (10th Cir. 1989).

■ While Rule 26 provides for broad discovery, information is not discoverable if it is privileged. Fed. R. Civ. P. 26(b)(1). When a federal civil case arises under federal law, Rule 501 of the Federal Rules of Evidence provides that federal common law governs the application of privilege. Fed. R. Evid. 501. Because this case is brought pursuant to federal law under 42 U.S.C. § 1983, the Court will apply the federal common law regarding privilege. Fed. R. Evid. 501; Second Am. Compl. 28–30. All privileges applied under federal common law are construed narrowly by the Court. *Roe v. Catholic Health Initiatives Colo.*, 281 F.R.D. 632, 636 (D. Colo. 2012). The Court will first address the application of privilege to the communications at issue. Second, the Court will consider the context in which those communications were relayed to determine whether an applicable privilege was waived by Defendants.

### ATTORNEY-CLIENT PRIVILEGE

■ First, the Court must assess whether the attorney-client privilege applies to the communications sought by Plaintiffs. The attorney-client privilege extends to individuals, corporations, and governmental entities and is meant to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *United States v. Jicarilla*

---

Concerning Common Interest Claims [Doc. 113] on March 29, 2016. U.S.D.C.L.R. 7.1(b)(1)(D). Furthermore, the "additional material" is wholly unnecessary as the Court allowed Plaintiffs' counsel: ten additional pages beyond the page limit in their Motion to Compel; a combined total of three hundred thirty-one additional pages in supporting exhibits; and an extension of time to file their original Reply. Memo. in Supp. of Pls.' First Mot. to Compel production of Docs. Concerning Common Interest Claims 20, Exs. 1–31,

Mar. 1, 2016, ECF No. 100; Order Granting Pls.' Unopposed Mot. to Extend U.S.D.C.L.R. 7.1(b)(1)(D) Deadline to File Reply Br.1, Mar. 18, 2016, ECF No. 110. Additionally, Plaintiffs' counsel filed the document at issue without leave of the Court or conferral with opposing counsel, which is also required by the Local Rules. U.S.D.C.L.R. 7.1(b)(1)(A). Thus, while the Court will consider the additional material, Plaintiffs' counsel is advised to comply with the local rules in all future proceedings.

*Apache Nation*, 564 U.S. 162, 169–70, 131 S.Ct. 2313, 180 L.Ed.2d 187 (2011); *In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)); *Ross v. City of Memphis*, 423 F.3d 596, 601 (6th Cir. 2005). To establish application of the attorney-client privilege, the party claiming the privilege must prove there was: (1) a communication, (2) between privileged persons, (3) made in confidence, and (4) for the purpose of seeking, obtaining, or providing legal assistance.[2] *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014); *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007); *United States v. Lopez*, 777 F.2d 543, 552 (10th Cir. 1985); Restatement (Third) of the Law Governing Lawyers § 68 (2000); Edna Selan Epstein, *The Attorney Client–Privilege and the Work–Product Doctrine* 35 (3d ed. 1997). Privileged persons include attorneys, clients, and "any of their agents that help facilitate attorney-client communications or legal representation." *In re*

*Teleglobe Commc'ns Corp.*, 493 F.3d at 345. Agents include independent contractors with a strong relationship to the entity and the need for legal services. *Martensen v. Koch*, 301 F.R.D. 562, 576 (D. Colo. 2014). While courts often apply the attorney-client privilege to representatives of organizations, it is sometimes unclear which agents of the organization are clients for the purposes of attorney-client privilege. *Reed v. Baxter*, 134 F.3d 351, 357 (6th Cir. 1998); *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985).

The Sixth Circuit has held communications between city council members were not protected by the attorney-client privilege when council members participate in a meeting with a city attorney but act as third parties without interests. *Reed*, 134 F.3d at 358. In *Reed*, a meeting occurred between the city council member defendant, the city attorney, the city manager, and two additional city council members. *Id.* at 353. When the plaintiff sought the communications made during the meeting, the defendant asserted the attorney-client

---

**2.** The Court notes numerous district courts throughout the 10th Circuit, including this Court, have stated the elements of the attorney-client privilege as follows: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection be waived. *Roe v. Catholic Health Initiatives Colo.*, 281 F.R.D. 632, 636 (D. Colo. 2012); *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009). These elements stem from Professor Wigmore's treatise on evidence. 8 John Henry Wigmore, Evidence § 2292 (McNaughton rev. ed. 1961). However, courts have consistently found deficiencies in these elements. For instance, while the elements "refer[ ] only to communications made by the client to an attorney, it is clear that advice communicated by a lawyer to the client is also within the scope of the privilege." *Cypress*

*Media, Inc. v. City of Overland Park*, 268 Kan. 407, 997 P.2d 681, 689 (2000); *Shriver v. Baskin–Robbins Ice Cream Co.*, 145 F.R.D. 112, 114 (D. Colo. 1992). Moreover, other circuits have adopted tests for the application of the attorney-client privilege that are substantially more concise. *See United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) ("The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice."); *In re Lindsey*, 158 F.3d 1263, 1267 (D.C. Cir. 1998) ("The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services."). Thus, the Court will deviate from its prior application of Professor Wigmore's eight element test and adopt the more straightforward test applied by the Restatement (Third) of the Law Governing Lawyers.

privilege. *Id.* 354–55. Ultimately, the court found communications made during the meeting were not protected by the attorney-client privilege as the two additional council members "played no role" in the subject matter of the meeting. *Id.* at 358.

Before *Reed*, the Sixth Circuit allowed application of the attorney-client privilege to communications between a city attorney, a city council, and a city administration, even though the council and administration retained outside counsel, acted as separate branches of government, and took opposing positions in a condemnation action. *In re Grand Jury Subpoena*, 886 F.2d 135, 137–39 (6th Cir. 1989). The court ultimately determined that the city council and city administration were all clients of the city attorney, even though both entities retained outside counsel, as the "[c]ity [c]ouncil's decision to obtain legal advice from an attorney outside of [its counsel] did not convert [the] [c]ity [c]ounsel into a separate party apart from the [c]ity itself." *Id.* at 138. Moreover, the court in *Reed* noted that *In re Grand Jury Subpoena* involved the participation of the entire city council and proceedings arising under the city code. *Reed*, 134 F.3d at 357; *In re Grand Jury Subpoena*, 886 F.2d at 137.

District courts have generally applied the attorney-client privilege to city council members and the entire city council concurrently, even when an individual council member claims to be acting independently. *See Interfaith Hous. Del., Inc. v. Town of Georgetown*, 841 F.Supp. 1393, 1397–98 (D. Del. 1994) ("The individual councilmembers are all agents of the Town Council and share common interests with the Town Council regarding the proposed development ... [and have] an independent obligation to bring judgment to bear on the issues confronting the town."); *Shipyard Assocs., L.P. v. City of Hoboken*, No. 14-1145(CCC), 2015 WL 4623470, at *8

(D.N.J. Aug. 3, 2015); *Bauer v. Cnty. of Saginaw*, No. 14-cv-11158, 2015 WL 1439424, at *4 (E.D. Mich. Mar. 27, 2015); *Burkhead & Scott, Inc. v. City of Hopkinsville*, No. 5:12-CV-00198-TBR, 2014 WL 6751205, at *5 (W.D. Ky. Dec. 1, 2014); *Humphries v. Chicarelli*, No. 1:10-cv-749, 2012 WL 5930437, at *5 (S.D. Ohio Nov. 27, 2012), *aff'd*, 554 Fed.Appx. 401 (6th Cir. 2014). In *Humphries*, the court considered whether the attorney-client privilege applied to communications made at meeting between a city law director, city manager, the city council, and newly elected city council members not yet part of the council. *Humphries*, 2012 WL 5930437, at *1. At the meeting, the law director asserted he was only participating in his capacity as the city's lawyer, not as part of the city council. *Id.* at *4. Despite the presence of the city-council member elects and the law director's representation, the court found the attorney-client privilege applied to the communications made at the meeting. *Id.* at *4–5. Specifically, the court noted the law director acted in accord with his role by explaining "the legal ramifications of allegations against [the plaintiff] and offered advice in that regard to members ... of [the] city council," even after he asserted an independent interest. *Id.* at *4. The court also did not find the presence of the city council member elects waived the attorney client privilege as those members had an interest in the policies and procedure of the city council. *Id.*

### WAIVER AND THE COMMON-INTEREST DOCTRINE

■■■ The Court must next consider whether any applicable privilege was waived by Defendants or disclosed to outside parties as part of a common interest. When a communication or document between a lawyer and client is disclosed to a third party the applicable privilege is waived and the communication or docu-

ment is open to discovery. *In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d at 1186; *Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615, 620 (D. Kan. 2001) (citing *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir. 1990)); However, the common-interest doctrine, which "can only exist where there is an applicable underlying privilege," acts as an exception to waiver of the attorney-client privilege. *Metro Wastewater Reclamation Dist. v. Cont'l Cas. Co.*, 142 F.R.D. 471, 478 (D. Colo. 1992); *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05-2191JWL-DJW, 2006 WL 3715927, at *1 (D. Kan. Dec. 12, 2006). For the common-interest doctrine to apply, "'most courts ... insist that the two [or more] parties have in common an interest in securing legal advice related to the same matter—and that the communications be made to advance their shared interest in securing legal advice on that common matter.'" *Id.* The interest in securing legal advice must be more than merely similar, it must be identical. *Frontier Ref., Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d 695, 705 (10th Cir. 1998) (citing *NL Indus., Inc. v. Commercial Union Ins. Co.*, 144 F.R.D. 225, 230 (D.N.J. 1992)); *see also United States v. Hudson*, No. 13-20063-01-JWL, 2013 WL 4768084, at *2 (D. Kan. Sept. 5, 2013) (citing *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1127–28 (9th Cir. 2012) (holding a shared desire to obtain the same outcome in a legal proceeding does not establish a "common interest" or "joint defense" privilege)).

Intertwined with the common-interest doctrine is the joint-defense privilege.[3] "The joint[-]defense privilege enables counsel for clients facing a common litigation opponent to exchange privileged communications and attorney work product in order to adequately prepare a defense without waiving either privilege." *W. Fuels Ass'n v. Burlington N.R.R. Co.*, 102 F.R.D. 201, 203 (D. Wyo. 1984). For the joint-defense privilege to apply, the party asserting the privilege must show evidence "(1) documents [or communications] were made in the course of a joint-defense effort; and (2) the documents [or communications] were designed to further that effort." *In re Grand Jury Proceedings*, 156 F.3d 1038, 1043 (10th Cir. 1998) (citing *United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 28 (1st Cir. 1989)). The joint-defense privilege does not require defendants to be parties to same litigation. *Carbajal v. Lincoln Benefit Life Co.*, No. 06-cv-0084-EWN-KLM, 2007 WL 3407345, at *4 (D. Colo. Nov. 13, 2007) (citing *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1172 (D.S.C. 1974)). The Court will now address whether the communications sought by Plaintiffs are protected by the

---

**3.** As noted by Defendants, case law regarding the common-interest doctrine and joint-defense privilege is "imprecise." Defs.' Resp. to Pls.' First Mot. to Compel 9. While some courts have used the terms interchangeably, the privileges appear distinct. *See Static Control Components, Inc. v. Lexmark Int'l., Inc.*, 250 F.R.D. 575, 578 n.2 (D. Colo. 2007); *Metro Wastewater Reclamation Dist.*, 142 F.R.D. at 478–79; *Hudson*, 2013 WL 4768084, at *2. The common-interest doctrine, which may apply without a joint-defense agreement or to communications and documents produced before litigation begins against co-defendants, appears broader than

the joint-defense privilege, which is generally applied after defendants have entered into a formal agreement. *See Bass Pub. Ltd. Co. v. Promus Cos., Inc.*, 868 F.Supp. 615, 621 (S.D.N.Y. 1994) ("The joint defense privilege only applies, however, to communications between actual or potential co-defendants and their attorney for any common defense purpose."); *Sawyer v. Sw. Airlines*, No. Civ.A.01-2385-KHV, 2002 WL 31928442, at *3 n.13 (D. Kan. Dec. 23, 2002) (citing *State v. Maxwell*, 10 Kan.App.2d 62, 691 P.2d 1316 (1984). Each privilege potentially applies as an exception to waiver in this case.

attorney-client privilege or whether the privilege was waived but still protected by the common-interest doctrine or joint-defense privilege.

### COMMUNICATIONS BETWEEN PATTERSON, THE CITY COUNCIL, REEVES, STUDER, AND DIXON

■ Communications regarding the removal proceedings that passed between Patterson, the City Council, Reeves, Studer, and Dixon are subject to the attorney client privilege and common interest doctrine and not discoverable. The attorney-client privilege and common-interest doctrine apply to government entities such as the City Council and City of Casper. *Jicarilla Apache Nation*, 564 U.S. at 169–70, 131 S.Ct. 2313; *Ross*, 423 F.3d at 601. Second, it is evident that the necessary elements of the attorney-client privilege apply to the sought communications between Patterson, the City Council, Reeves, Studer, and Dixon. Communications existed as the privilege log identifies emails between Patterson, the City Council, and their lawyers. *In re Kellogg brown & Root, Inc.*, 756 F.3d at 757; Am. Memo. in Supp. of Pl.'s First Mot. to Compel Ex. 2. Moreover, as Patterson and the City Council retained their attorneys for legal assistance related to the investigation and attempted removal of Hedquist, it is evident that the parties were privileged persons communicating for the purpose of legal assistance. *In re Kellogg Brown & Root, Inc.*, 756 F.3d at 757. Finally, the communications were confidential as emails were passed between only Patterson, the City Council, Reeves, Studer, Dixon, and their staff, not outside third parties. *Id.*

■ Plaintiffs argue communications between Patterson, the City Council, and their lawyers are not protected by the attorney-client privilege as Patterson and the City Council had divergent, not identi-

cal, interests in removing Hedquist. Am. Memo. in Supp. of Pl.'s First Mot. to Compel 19. Thus according to Plaintiffs, Patterson or the City Council waived any applicable attorney-client privilege by sharing any information provided by a respective attorney with the other entity. *Id.* The Court disagrees. Case law applying the common-interest doctrine to government entities has consistently held that the doctrine applies to the governmental entity as a whole when its members are all collectively participating in the matter at issue. *See In re Grand Jury Subpoena*, 886 F.2d at 137–39; *Interfaith Hous. Del., Inc.*, 841 F.Supp. at 1397–98; *Humphries*, 2012 WL 5930437, at *5; *Bauer*, 2015 WL 1439424, at *4. This is true even where members of the entity act with differing interests. *In re Grand Jury Subpoena*, 886 F.2d at 138; *Humphries*, 2012 WL 5930437, at *5.

While Patterson and the City Council may have had alternative roles in Hedquist's removal proceeding, they shared an identical legal interest in (1) the investigation of Patterson's conduct and (2) obtaining legal advice related to the legality of the removal proceedings. Additionally, and similar to the *In re Grand Jury Subpoena* case, the removal proceedings arose under the City Code, which governs Patterson and the City Council equally. *In re Grand Jury Subpoena*, 886 F.2d at 138; Am. Memo. in Supp. of Pls.' First Mot. to Compel 5. Therefore, the common-interest doctrine protects the confidential communications exchanged between Patterson, the City Council, Reeves, Studer, and Dixon. The only exception, as noted by Defendants, are communications between Patterson and the City Council relating to the Petition for Removal.

Plaintiffs rely on *Reed* to support their position that the common-interest doctrine does not extend to the communications shared between Patterson, the City Coun-

cil, and their Attorneys. Am. Memo. in Supp. of Pls.' First Mot. to Compel 18–19. However, *Reed* is distinguishable from the facts before the Court in this case. In *Reed,* the Sixth Circuit found the attorney-client privilege or common-interest doctrine did not apply to communications made during a meeting between the city attorney, the city manager, and three city council members. *Reed,* 134 F.3d at 358. Notably the court's analysis focused on the presence of two city council members who "played no role" in the meeting's subject matter. *Id.* Here, the removal of Hedquist required the participation of Patterson and the entire City Council, again demonstrating that Patterson and the Council shared an identical legal interest in the investigation of Hedquist and the propriety of the removal proceeding.

The facts in this case are most similar to *In re Grand Jury Subpoena* and *Humphries.* In each case, the court held that city council communications were protected, even when members had divergent interests. *In re Grand Jury Subpoena,* 886 F.2d at 137–39; *Humphries,* 2012 WL 5930437, at *5. In *In re Grand Jury Subpoena,* the court protected communications shared between outside counsel, the city council, and the city administration, even though the city council and administration held different positions on a condemnation action. *In re Grand Jury Subpoena,* 886 F.2d at 138. In *Humphries,* the court allowed the assertion of the attorney-client privilege over meeting communications even after a city law director stated he was only participating as the city's lawyer, not a council member, and with the presence of newly elected council members. *Humphries,* 2012 WL 5930437, at *5. Both cases are analogous to the current issues before the court. Patterson and the City Council had different roles and views in the removal proceedings, but shared an interest in all other aspects through their responsibil-

ity to the City. Furthermore, as stated in *In re Grand Jury Subpoena,* the City Council and Patterson's "decision to obtain legal advice from an attorney outside of [the city council] did not convert [the city council] into a separate party from the [c]ity itself." Therefore, the Court denies Plaintiffs' Motion to Compel any communications shared between Patterson, the City Council, Reeves, Studer, Dixon, and their staff except for those communications identified by Defendants related to the Petition for Removal.

### COMMUNICATIONS BETWEEN PATTERSON, THE CITY COUNCIL, BEAMER, AND CEPI

 Similarly, communications between Patterson, the City Council, Beamer, CEPI and their attorneys related to the City's business with Hedquist and Hedquist Construction, Inc. are also privileged. Again, the attorney-client privilege and common-interest doctrine apply to government entities and attached agents. *Jicarilla Apache Nation,* 564 U.S. at 169–70, 131 S.Ct. 2313; *Ross,* 423 F.3d at 601. All elements of the attorney-client privilege are satisfied as confidential email communications related to the City's contracts with Plaintiffs passed between the lawyers to the City Council and its "agents that help facilitate ... legal representation." *In re Teleglobe Commc'ns Corp.,* 493 F.3d at 345. The participation of Beamer and CEPI in any of the communications did not waive the attorney-client privilege, as they were privileged participants. Beamer and CEPI, as the City Engineer and the City's contractor, helped facilitate the legal representation as each provided details and facts surrounding the projects involving Plaintiffs to counsel for analysis. As an independent contractor, CEPI maintained a strong relationship to the city as it was project engineer on three of the four contracts between the City and Hedquist Construction, Inc. CEPI also worked ex-

tensively on the contracts as Tom Brauer served to mediate the deal and received confidential information related to the City's position.

■ Even if disclosing communications to Beamer or CEPI waived the attorney-client privilege, the common-interest doctrine acts as an exception to the purported waiver. *Metro Wastewater Reclamation Dist.*, 142 F.R.D. at 478. Patterson, the City Council, Beamer, and CEPI all maintained an identical interest in investigating the contracts, determining how to act toward Hedquist Construction, Inc., and monitoring the projects. Although Patterson and Beamer may have shown animosity toward Plaintiffs, the interest remained the same: properly representing the City in its contracts and investigating the conflict of interest. Again, unlike the disinterested council members present in *Reed*, Beamer and CEPI, had an interest in ensuring the projects were completed properly.

Plaintiffs' argument that Patterson lacked the requisite identical interest because he abstained from a vote on the contract is unpersuasive. Additional Material in Supp. of Pls.' First Mot. to Compel 2–3. At the time of the impending vote, Patterson had already been sued by Plaintiff. Moreover, as noted in *Humphries*, a party with an otherwise common interest does not defeat the privilege merely by claiming to act on behalf of another party. Therefore, the Court finds communications between Patterson, the City Council, Beamer, and CEPI are privileged.

### COMMUNICATIONS BETWEEN DEFENSE COUNSEL AND CO-DEFENDANTS

■ Communications between defense counsel following the execution of the joint-defense agreement are privileged and not discoverable. As noted above, the joint-defense privilege to applies if the "(1) documents [or communications] were made in the course of a joint-defense effort; and (2) the documents [or communications] were designed to further that effort." *In re Grand Jury Proceedings*, 156 F.3d at 1043. Here it is apparent that communications between Defendants and their attorneys are protected as a joint-defense agreement was entered by Patterson and the City, the Defendants face the same Plaintiffs, and the Defendants are defending the same claims under federal law. Defs.' Resp. to Pls.' First Mot. to Compel 11. As such, communications between these parties are for the purpose of furthering the defense effort. Plaintiffs' Motion to Compel communications or documents exchanged between defense counsel is denied.

### CONCLUSION

The Court denies Plaintiffs' Motion to Compel. The Court finds the attorney client privilege applies to the communications between Patterson, the City Council, Reeves, Studer, and Dixon regarding the removal proceedings and Patterson, the City Council, Beamer, CEPI, and their attorneys related to the contracts with Hedquist Construction Inc. Any purported waiver of the attorney-client privilege is excepted by the common-interest doctrine or joint-defense privilege. However, communications concerning the Petition for Removal, as conceded by Defendants, featured divergent interests and shall be produced.

NOW, THEREFORE, IT IS ORDERED that Plaintiffs' First Motion to Compel Production of Documents Concerning Common Interest Claims [Doc. 97] is DENIED.